<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CECIL O. HARVEY, : | |
| : | Civil Action No. 04-1221 (SRC) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| TOM RIDGE, Head of Homeland Security, : | |
| HOMELAND SECURITY, et al., : | |
| : | |
| Defendants. : | |
| : | |

**<u>CHESLER</u>**, District Judge

     This matter comes before the Court upon three motions for summary judgment: a motion filed on behalf of Defendant Dr. Chang and Third Party Defendant Correctional Health Services, Inc. (docket item # 118); a motion filed on behalf of Defendants named in the Complaint as Bergen County Jail, Acting Warden Duffy, Lieutenant Pecoraro, and Medical Department, Bergen County Jail (hereinafter, the "Bergen County Defendants") (docket item # 121); and a motion filed on behalf of named Defendants Tom Ridge, Earl McElroy, Chief Detention Officer Rodriguez, Immigration Enforcement Officer Urena, and Public Health Division of the Department of Health and Human Services (hereinafter the "Federal Defendants") (docket item # 124). Plaintiff, an incarcerated *pro se* litigant, has filed a very late submission identified as a "final amendment to the plaintiff's brief in support of his motion for summary judgment," (docket item #126) which the Court has considered as Plaintiff's opposition to the Defendants'

summary judgment motions.[1]  The Court rules based upon the parties' written submissions pursuant to Federal Rule of Civil Procedure 78.  For the reasons discussed below, the motions for summary judgment will be granted.

I.      BACKGROUND

      A.      **Relevant Facts**

*Pro se* Plaintiff Cecil O. Harvey initiated this action under 42 U.S.C. § 1983 alleging that the medical care he received while incarcerated at the Bergen County Jail from approximately January 16, 2004 to September 25, 2004 was inadequate and violated his Eighth Amendment right against cruel and unusual punishment.  Mr. Harvey's alleged medical problems arise out of an injury he claims to have sustained to his back and neck when he fell from a ladder in or about June 2003, while out on bail in connection with New York state criminal charges.  Plaintiff testified at his deposition that he did not begin to experience symptoms from the injury until December 2003, at which time he was incarcerated in Riker's Island Correctional Center on New York state charges.  He also testified that he did not receive any treatment for his injuries prior to his detention at the Bergen County Jail in January 2004.

Pursuant to a final order of deportation, the Immigration and Customs Enforcement bureau ("ICE") took Mr. Harvey into custody on or about January 13, 2004, at which time he was assigned to the Passaic County jail.  He was transferred to the Bergen County Jail[2] days later.

---

[1] The docket reveals no pending summary judgment motion filed by Plaintiff.

[2] ICE contracts with Bergen County for detention space in the jail.

The Complaint[3] does not allege that he received substandard care at the Passaic County Jail or, in fact, contain any information concerning his incarceration in that facility between approximately January 13 and January 16, 2004.

Upon his arrival at the Bergen County Jail on or about January 16, 2004, Mr. Harvey received a medical evaluation by a nurse. He was placed on a low sodium diet and, in response to his reported difficulty in moving around, was assigned to a cell on the first tier and to a lower bunk. The uncontroverted evidence before the Court demonstrates extensive treatment given to Plaintiff by medical personnel working at the Bergen County Jail and by private off-site facilities. On January 22, 2004, Plaintiff had his earliest documented visit with Dr. Chang, a physician employed by Correctional Health Services,[4] although Plaintiff believes he initially saw Dr. Chang even earlier than that date. The parties' briefs detail for pages the numerous times Plaintiff was seen by physicians and nurses, the constant blood pressure monitoring he received, and the various medications he was prescribed for, among other ailments, hypertension, neck pain, foot pain, allergies and asthma. Plaintiff was seen by Dr. Chang at least 22 times, the last of which was the day before he was transferred out of the Bergen County Jail. He was also seen by two other doctors at the jail, for a combined total of eight visits with those doctors.

With regard to Plaintiff's complaints of neck pain, on February 5, 2004 - less than one month after Plaintiff had been at the Bergen County Jail - Dr. Chang sought authorization from

---

[3] Plaintiff filed a Complaint on or about February 14, 2004, and an Amended Complaint on or about February 26, 2004. For purposes of simplicity, the Court refers to both documents jointly as the "Complaint."

[4] Correctional Health Services is a private entity with which Bergen County contracts to provide medical services at the jail.

3

the Division of Immigration Health Services, Department of Health and Human Services ("DIHS") for Plaintiff to receive an MRI from an outside facility.[5] Although initially denied by DIHS due to the need for more clinical information pertaining to the condition and treatment, DIHS approved Dr. Chang's renewed request of March 3. Plaintiff had an MRI of his brain and spine performed on March 8, and met with Dr. Chang a few days later to discuss the results, which confirmed that Plaintiff had a herniated disc in the neck at C3-4. Following this diagnosis, Plaintiff underwent various orthopedic and neurological evaluations at private, off-site hospitals and received physical therapy at the Bergen Regional Medical Center for his neck pain. He had a second MRI of the brain and spine in July. Throughout his detention at the Bergen County Jail, Plaintiff received conservative treatment for the herniated disc with pain medication.

    Mr. Harvey also received treatment for a number of other ailments of which he complained, including colds and allergies. His hypertension was constantly monitored with frequent blood pressure checks and treated with medication. On March 17, he was taken to the Hackensack University Hospital Medical Center Emergency Room due to elevated blood pressure and discharged after a couple of hours. Upon his return to the jail, Plaintiff was seen by a nurse and cleared before being returned to the general population. The next day, he received an evaluation at the Hackensack University Hospital to rule out stroke. Based on subjective complaints of pain, Plaintiff also had x-rays taken of his knees in July and of his left foot and ankle in September. He received blood work on five occasions, administered to monitor Mr.

---

[5] The Declaration of Steve Wacha, a Commissioned Corps Officer in the Public Health Service assigned to DIHS, explains that immigration detainees, such as Plaintiff, must obtain pre-approval from DIHS for payment of any non-routine or off-site medical care. Government agencies or private providers are required to make the request in writing using a DIHS Treatment Authorization Form ("TAR").

Harvey's health due to the various medications he was taking.

Plaintiff complained of the medical attention he received at the Bergen County Jail. In response to a letter of April 14, 2004 written to Lieutenant Pecoraro by Plaintiff, Lieutenant Pecoraro was assigned to inquire into the level and quality of care Plaintiff received. He spoke with medical personnel at the Bergen County Jail about the matter and learned that Plaintiff was receiving "excellent" care. (Pecoraro Cert., Ex. C.) His inquiry revealed that Plaintiff benefitted from frequent and thorough medical attention, and he apprised Plaintiff of his findings by memorandum of April 28, 2004. Even after this initial inquiry and response, Lieutenant Pecoraro continued to follow up with the jail's medical personnel about Plaintiff's care. A request was made to Dr. Chang for an update as to Plaintiff's treatment. Dr. Chang's August 24, 2004 memorandum in response stated: "At present, Mr. Harvey ambulates without any difficulty and no clinical evidence of any neurological dysfunction . . . After a complete review of his medical record, it is evident that Mr. Harvey has received appropriate care given the capacity of the medical staff at the Bergen Count [sic] Jail and there is no merit to the basis of his repeated complaints." (Pecoraro Cert., Ex. E.)

On September 25, 2004, Plaintiff was transferred from the Bergen County Jail to the Monmouth County Jail, where his immigration detention continued. At the Monmouth County Jail, Plaintiff was evaluated by orthopedist Dr. Andrew Harrison on July 25, 2005. Dr. Harrison issued a one-page handwritten medical record of the evaluation. It stated that Mr. Harvey had exhausted the standard of care of orthopedic treatment options. (Marcy Cert., Ex. F.)

B.     **Procedural Background**

Plaintiff instituted this action on February 14, 2004 in the United States District Court, Eastern District of New York. He filed an Amended Complaint on February 26, 2004. The Amended Complaint pled section 1983 claims for inadequate medical care in violation of Plaintiff's constitutional rights and claims of gross negligence. The action was transferred to this Court on July 14, 2004. By Opinion & Order of February 8, 2006, the Court adjudicated earlier motions for summary judgment filed by Dr. Chang, the Bergen County Defendants and the Federal Defendants. The Court denied the motions without prejudice, in part because the parties had briefed the matter of Plaintiff's constitutional claims according to the wrong legal standard. Additionally, in light of Plaintiff's addition of Dr. Harrison to his witness list in the Final Pretrial Order, the Court also ordered the parties to address the issue of Dr. Harrison's report and possible testimony. Moreover, the February 8, 2006 Order dismissed Plaintiff's negligence claims as having been abandoned by Plaintiff.

Discovery as to Plaintiff's medical condition, including the deposition of Dr. Harrison, was conducted. The Court appointed *pro bono* counsel to Mr. Harvey for the limited purpose of assisting him with this discovery. Though counsel consulted with an expert, no report or disclosure of that expert was produced, as Plaintiff decided not to use the expert. The Court denied Plaintiff additional time to secure a different expert. In the summer of 2006, the parties filed the instant motions for summary judgment, and Plaintiff failed to submit opposition as provided by the Local Civil Rules. To afford Plaintiff an enlarged opportunity to oppose, the Court adjourned the motions until October 10, 2006 and ordered Plaintiff to file opposition, if any, no later than September 26, 2006. On December 26, 2006, Plaintiff filed a submission

identified by him as a "final amendment to the plaintiff's brief in support of his motion for summary judgment," which the Court treats as his opposition to the summary judgment motions at bar.

II.    LEGAL ANALYSIS

    A.    **Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. Pursuant to Federal Rule of Civil Procedure 56(e), the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993)).

  B. **Nature of Plaintiff's Claims**

  At the outset, the Court notes that because Mr. Harvey is a *pro se* plaintiff, it will construe his pleadings liberally.  Haines v. Lerner, 404 U.S. 519, 520 (1972).  Mr. Harvey's Complaint alleges conduct that amounts to "cruel and unusual punishment," language sounding in the protections of the Eighth Amendment.  However, it is undisputed that at the relevant time of incarceration, Mr. Harvey was detained by ICE pursuant to a final order of removal and was not serving a sentence for a criminal conviction.  As an immigration detainee, his status was equivalent to that of a pre-trial detainee.  Crosby v. Georgakopoulos, No. 03-5232 (WGB), 2005 WL 1514209, at *3 (D.N.J. June 24, 2005).  It is well-established that, pursuant to the rights guaranteed by the Due Process Clause, an individual may not be subjected to punishment without an adjudication of guilt.  City of Revere v Mass. Gen. Hospital, 463 U.S. 239, 244 (1983); Bell v. Wolfish, 441 U.S. 520, 535 (1979); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005).  Therefore, notwithstanding the language of the Complaint, Plaintiff's constitutional claims concern his rights under the Due Process Clause of the Fifth Amendment (applicable to the Federal Defendants) and Fourteenth Amendment (applicable to Dr. Chang and the Bergen County Defendants), and the Court will analyze this summary judgment motion accordingly. Gonzalez-Cifuentes v. United States Dep't of Homeland Sec., No. 04-4855 (WHW), 2005 WL

1106562, at *6 (D.N.J. May 3, 2005) (citing Hubbard, 399 F.3d at 158).

Moreover, although the Complaint cites only 42 U.S.C. § 1983 as the basis for his constitutional claims, the Court understands this case to be grounded in section 1983 as well as the cause of action recognized in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971).  Plaintiff's civil rights claims against Dr. Chang and the Bergen County Defendants fall under section 1983, which provides a cause of action for constitutional violations committed under color of state law.[6]  Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).   The allegations against the Federal Defendants do not, however, fall within the ambit of section 1983.  Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001).  Allegations of constitutional violations under color of federal law - in this case, the Fifth Amendment right to due process - are properly brought under Bivens.  Id. at 800.  Similar to the framework of a section 1983 action, a Bivens claim requires a plaintiff to show that (1) he has been deprived of a right secured by the Constitution of the United States; and (2) the deprivation was caused by an official acting under color of federal law.  Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978).

###   C.   Claims Against Federal Defendants

The Complaint names the following Federal Defendants: former Director of Homeland Security Tom Ridge, District Director of ICE Early McElroy, Chief Detention Officer Rodriguez,

---

[6] Though Dr. Chang worked in the Bergen County Jail as an employee of the private entity Correctional Health Services, Inc., which provided medical services to the inmates under contract with Bergen County, it is uncontested that Dr. Chang was "clothed with the authority of state law" so as to bring him within section 1983.  West v. Atkins, 487 U.S. 42, 49 (1988).

9

Immigration Enforcement Agent Urena and the "Federal Public Health Department." Plaintiff's Bivens action against each of these defendants fails as a matter of law.

The Court has reviewed the Complaint in the light most favorable to Plaintiff. It cannot discern, even under the most liberal reading, any allegations directed at any of the individual Federal Defendants, namely Ridge, McElroy, Rodriguez and Urena. The Court need not address whether the record contains sufficient evidence of wrongdoing by these individuals to allow Plaintiff's civil rights claims for inadequate medical care to surmount their motion for summary judgment. Plaintiff's failure to allege particular actions or inaction by these defendants is fatal to his Bivens claims against them. Parratt, 451 U.S. at 537 n. 3; Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Our jurisprudence requires, at a minimum, that a defendant in a civil rights action be personally involved in the alleged wrongs and that the allegations of his or her role be made with "appropriate particularity." Rode, 845 F.2d at 1207. Plaintiff has not claimed that any of the federal officials named as defendants participated in the alleged deprivation of adequate medical attention in any way, much less come forward with any evidence that would establish liability on his due process claim against them. Plaintiff cannot prevail on his Bivens claims against the individual Federal Defendants.

The Court also dismisses with prejudice Plaintiff's claims against the Federal Defendant named as "Federal Public Health Department," which, based on the briefing before the Court, the Court understands to be the Public Health Division of the Department of Health and Human Services. Plaintiff's Bivens claim against the Public Health Division is precluded by the doctrine of sovereign immunity. It is axiomatic that the United States, as sovereign, is immune from suit, absent specific statutory waiver. Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 476 (1994). As

10

an agency of the sovereign, the Department of Health and Human Services also enjoys sovereign immunity.  Id.; In re University Med. Ctr., 973 F.2d 1065, 1085 (3d Cir. 1992). The Supreme Court has held that a Bivens action may not be maintained against an agency of the federal government.  Fed. Deposit Ins. Corp., 510 U.S. at 486.  Under sovereign immunity, the Court must dismiss Plaintiff's claims against the Public Health Division of the Department of Health and Human Services for lack of jurisdiction.  Id. at 475.

Thus, for the reasons discussed above, the Federal Defendants are entitled to summary judgment on the entire Complaint.

### D. Claims Against Bergen County Defendants

As discussed above, Plaintiff's status as an immigration detainee, held to be akin to that of a pretrial detainee, brings his constitutional claims for inadequate medical care within the purview of the Fourteenth Amendment's due process clause.  Although such claims are distinct from claims under the Eighth Amendment's proscription against cruel and unusual punishment, Bell, 441 U.S. at 535, the Third Circuit has held the analysis governing the provision of medical care to pretrial detainees and sentenced inmates is the same.  Hubbard, 399 F.3d at 166 n. 22.  To prevail on his claim, Plaintiff must demonstrate that the defendants' action or inaction constitutes deliberate indifference to a serious medical need.  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (analyzing prisoner's claim for inadequate medical care in violation of the Eighth Amendment); Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987), cert. denied, 485 U.S. 991 (1988) (emphasizing that Estelle requires satisfaction of both "deliberate indifference" test and requirement of "serious illness or injury").

The Third Circuit has defined deliberate indifference as a "subjective standard of liability consistent with recklessness as that term is defined by criminal law." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). Deliberate indifference may be shown where prison authorities know of the detainee's need for care but intentionally deny reasonable requests for treatment, exposing the inmate "to undue suffering or the threat of tangible residual injury." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), cert. denied, 485 U.S. 1006 (1988). It may also be established with evidence of actions by officials that delay necessary medical treatment for non-medical reasons, including the institution of "arbitrary and burdensome procedures that 'result in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 346-47 (quoting Todaro v. Ward, 565 F.2d 48, 53 (3d Cir. 1977)). A prisoner's disagreement with the course of treatment, however, does not support a claim of deliberate indifference. Id. at 346; Isenberg v. Prasse, 433 F.2d 449 (3d Cir. 1970)  Moreover, the Supreme Court has made clear that claims of negligent or merely inadequate medical treatment do not necessarily establish "deliberate indifference." Estelle, 429 U.S. at 105-06; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). It has cautioned that a medical malpractice claim should not be confused with a constitutional violation, simply because the plaintiff is incarcerated. Estelle, 429 U.S. at 106. A constitutional claim of deliberate indifference requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse, 182 F.3d at 197 (internal citation omitted). In short, to survive a summary judgment motion, a plaintiff must point to evidence that a defendant knew of and disregarded an excessive risk to the incarcerated plaintiff's health or safety. Natale,

12

318 F.3d at 582.

The evidence presented to the Court by the Bergen County Defendants[7] compels the conclusion that no reasonable factfinder could find that the Bergen County Defendants acted with deliberate indifference to a serious medical need. Far from showing that the prison officials at the Bergen County Jail consciously disregarded Plaintiff's medical needs, the record tends to demonstrate prompt and consistent attentiveness to Plaintiff's complaints, concerning both minor and serious ailments. As the fact section above details, in his nine months at the Bergen County Jail, Plaintiff saw doctors on about 30 occasions, received blood pressure checks from nurses constantly, and underwent various diagnostic tests for his orthopedic problem, hypertension and reported leg and foot pain. He was prescribed medication for his illnesses and conditions, and the medication was monitored and adjusted according to his needs and his response to the drugs. Even before clinical evaluation and films confirmed that Plaintiff had sustained a herniated cervical disc, the jail assigned him to a first-tier cell with a lower-bunk placement in light of his reported difficulty in moving around. He was transported to facilities outside the jail numerous times for orthopedic evaluations, tests to rule out stroke, an emergency room visit due to

---

[7] As stated above, the Bergen County Defendants are named by Plaintiff as the Bergen County Jail, Acting Warden Duffy, Lieutenant Pecoraro, and Medical Department, Bergen County Jail  Bergen County Jail and Medical Department, Bergen County Jail, are not "persons" that may be sued under 42 U.S.C. § 1983. Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); McLeod v. Monmouth County Correctional Institution, 2006 WL 572346, No. 05-4710 (AET) at * 4 (D.N.J. Mar. 8, 2006) (collecting cases holding county jail not an entity amenable to suit under § 1983); Simrin v. Correctional Med. Svcs., 2006 WL 469677, No. 05-2223 (RBK) at *3 (D.N.J. Feb. 24, 2006) (collecting cases holding that prison medical staff not a legal entity subject to suit); However, because Plaintiff is *pro se*, the Court reads his Complaint liberally and understands the pleading to name "Bergen County" as the proper defendant.

hypertension and physical therapy.  He had blood tests, an x-ray and two MRIs.  He received treatment for headaches, colds and allergies.  Through Dr. Chang, the Bergen County Jail repeatedly sought authorization for off-site specialized services for Plaintiff.

      Moreover, no evidence could support a finding that the two individual Bergen County Defendants, Warden Duffy and Lieutenant Pecoraro, acted with deliberate indifference to Plaintiff's medical needs.  The Complaint does not specify how these two individuals were allegedly involved in the wrongdoing charged by Plaintiff, but in his Narrative Statement encompassed in the Final Pretrial Order, Plaintiff states that Warden Duffy failed to investigate Plaintiff's complaints that he was not getting the appropriate medical attention and that Lieutenant Pecoraro did not follow up on the matter after he initially provided a response to Plaintiff.  The certification submitted by Lieutenant Pecoraro demonstrates otherwise.  Plaintiff's complaints were taken seriously by the Bergen County Jail.  They were investigated, and Plaintiff was given a prompt response.  The initial inquiry, and further investigation made in the following months, supported a reasonable conclusion that Plaintiff was receiving appropriate medical attention.

      Plaintiff has not come forward with any evidence disputing the regular medical care he received while incarcerated at the Bergen County Jail.  Indeed, his opposition brief does not deny having had MRIs or received any of the treatment detailed by Defendants' submissions.  Rather, Plaintiff contends, essentially, that more should have been done.  He states that MRI reports demonstrate that his diagnoses and treatment were "vastly incomplete" and insists that "defendants refused to engage in any further evaluations once they had what they concluded to be

14

the root cause of the plaintiff's medical complaints . . ." Plaintiff maintains that, as a result of defendants' conduct, Plaintiff's herniated disc can no longer be corrected. Mr. Harvey's unsubstantiated belief that he could have received better or different treatment does not support a deliberate indifference claim, and it certainly does not satisfy his burden under Rule 56 to defeat Defendants' summary judgment motion. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). At best, Plaintiff's statements amount to mere allegations of negligent care, unsupported by any evidence. As a matter of law, he cannot establish that Defendants acted with deliberate indifference to a serious medical need, in violation of his constitutional due process rights. See, e.g., Estelle, 429 U.S. at 107 (rejecting plaintiff's deliberate indifference claim where plaintiff was seen by medical personnel 17 times in a three-month period, received treatment for a back injury, high blood pressure and a heart problem, and contended that additional treatment and diagnostic techniques should have been performed).

Accordingly, the Bergen County Defendants' motion for summary judgment will be granted, and Plaintiff's claims against them will be dismissed with prejudice.

    E.    **Claims Against Dr. Chang**

For the same reasons discussed above in section D, summary judgment in favor of Dr. Chang on Plaintiff's deliberate indifference claims is warranted. The civil rights claims against Dr. Chang arise under 42 U.S.C. § 1983, for his conduct under color of state law as a physician

on staff at the Bergen County Jail.  Like the section 1983 claims against the Bergen County Defendants, Plaintiff's claims that Dr. Chang violated his due process right to adequate medical attention, that is, to be free from conditions that amount to punishment, must be analyzed under the deliberate indifference standard.

  The record contains abundant evidence that would prevent any fair-minded juror from concluding that Dr. Chang denied or delayed medical attention required by the Mr. Harvey with a deliberate indifference to his condition.  In fact, the record paints quite a different picture than Plaintiff's allegations would suggest – one of regular visits with Dr. Chang, in which the doctor tailored treatment to the subjective complaints and individualized needs of Plaintiff.  Though set forth in the statement of facts, it bears reiterating that Plaintiff presented for treatment by Dr. Chang over 20 times in the span of nine months.  Dr. Chang repeatedly sought authorization from DIHS for Mr. Harvey to receive services from outside providers.  He ordered off-site consultations with an orthopedist and a neurologist.  He also ordered physical therapy for Plaintiff.  He treated Plaintiff's herniated cervical disc conservatively with pain medication and adjusted medications to maximize effectiveness.  He ordered MRIs of Plaintiff's neck and spine. He performed several blood tests to ensure that Plaintiff was not being adversely affected by the number of different medications he was taking.  He monitored and treated Plaintiff's hypertension and ordered tests to rule out the possibility of stroke.  Dr. Chang took the time to review the results of Plaintiff's lab tests and films with him and to discuss treatment options, including Plaintiff's response to physical therapy.

The evidence overwhelmingly militates in favor of summary judgment.  It indicates a level of care completely inconsistent with Plaintiff's allegations of inadequate medical attention.  In fact, Dr. Harrison, an orthopedist working at the Monmouth County Jail to whom Mr. Harvey presented for a second opinion while incarcerated there, testified at his deposition that Plaintiff had "exhausted the standard of care of orthopedic treatment options."  (Tr. of May 16, 2006 Dep. of Dr. Harrison, 14:22-25: attached to Marcy Cert., Ex. J.)  Plaintiff, for his part, has failed to point to any evidence that would create a genuine issue as to whether Dr. Chang acted with deliberate indifference to Plaintiff's medical needs.  It is clear that Dr. Chang did not disregard Plaintiff's needs in a wanton and obdurate manner and, therefore, that Plaintiff cannot prevail on his claims as a matter of law.  Accordingly, Dr. Chang's motion for summary judgment will be granted.

The Court notes, additionally, that the jointly filed summary judgment motion of his employer, Correctional Health Services, must also be granted.  Correctional Health Services was named as a Third-Party Defendant by the Bergen County Defendants for contribution and indemnification.  The dismissal of Plaintiff's direct claims against the Bergen County Defendants necessarily requires the dismissal of their third-party claims against Correctional Health Services.

**IV.	CONCLUSION**

For the foregoing reasons, this Court grants the three motions at bar for summary judgment, dismissing with prejudice Plaintiff's Complaint in its entirety. An appropriate form of order will be filed together with this Opinion.

 s/ Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

DATED: February 28, 2007